PEARSON, MJ

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |  |
|---|---|---|
| PAUL SCOTT SIMMONS, | ) | CASE NO.   5:09-CV-01200 |
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | JUDGE GAUGHAN |
| v. | ) |  |
|  | ) | MAGISTRATE JUDGE PEARSON |
| COMMISSIONER OF SOCIAL SECURITY, | ) |  |
|  | ) |  |
| Defendant. | ) | **REPORT AND RECOMMENDATION** |

Plaintiff Paul Scott Simmons seeks judicial review of the Social Security Administration's ("Agency") final decision finding him not disabled from August 1, 2000, through March 23, 2003, and, therefore, not entitled to Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") for that time period.[1] ECF No. 1.

For the reasons provided below, the undersigned finds that the Agency's decision to deny benefits for the time period spanning August 1, 2000 through March 23, 2003 is based upon proper legal standards and supported by substantial evidence.  Accordingly, the undersigned recommends that the Agency's final decision be affirmed.

## I.  Overview

Simmons acknowledges that he has been receiving Social Security benefits from "March

---

[1] District Judge Patricia A. Gaughan referred this matter to the undersigned Magistrate Judge pursuant to Local Rule 72.2 to prepare a Report and Recommendation.  Docket Entry June 29, 2009 [non-document].

(5:09-CV-01200)

23rd, 2003  to the present day." ECF No. 16 at 1.  The gist of Simmons' complaint is that the

benefits should have begun earlier – starting August 1, 2000 – because his disabilities were

"exactly the same" on August 1, 2000 through March  23, 2003 (the range of dates for which he

was denied benefits) as they were on March 24, 2004 (the date he was awarded benefits).  ECF

No. 16 at 1.

 The Agency determined that Simmons, who was 38 years old at the time of the last

hearing before an Administrative Law Judge ("ALJ"), "was not disabled prior to March 24, 2003,

but became disabled on that date and has continued to be disabled through" the date of the ALJ's

decision, December 29, 2008.  (Tr. 17, 24 and 155.)  The final ALJ to review Simmons'

application found that beginning on March 24, 2003, Simmons –  who has at least the equivalent

of a highschool education, has been unemployed most of his adult life with his longest lasting

employment as a roofer – was unable to sustain full-time work "[d]ue to his deteriorating mental

condition."[2]  (Tr. 21, 24, 176.)

## II.  Procedural History

 Simmons' applications for DIB and SSI (collectively "benefits") has an extensive history

of interagency review.  The Appeals Council reversed and remanded the initial ALJ decision

with instructions for a new hearing and decision as to whether Simmons was under a disability

on or before March 31, 2004.[3]  (Tr.17.)  The resulting denial decision is on appeal in the instant

---

 [2]  Simmons reports having completed the twelfth grade; a medical care provider reports
that Simmons quit highschool in the eleventh grade and obtained a GED.  (Tr. 181, 397.)

 [3]  The specific charge given the ALJ upon interagency remand was to determine if
Simmons was disabled on or before March 31, 2004 or April 9, 2007.  (Tr. 603.)  March 31,

(5:09-CV-01200)

matter.  The details of the somewhat protracted procedural history follow.

Alleging an inability to work starting on August 1, 2000 because of an "injury to [his] left knee, lower left leg, right knee [and] arthritis in [his] back," Simmons applied for DIB and SSI.[4] (Tr. 155, 175.)  The Agency initially and upon reconsideration denied Simmons' claims.  (Tr. 61, 67.)  Upon Simmons' request for review, ALJ Jerry F. Muskrat (the first ALJ to hear the matter, "ALJ1") conducted a bifurcated hearing.  (Tr.589.)  On December 4, 2006, ALJ1 commenced a hearing during which Simmons, a Medical Expert addressing Simmons' physical condition and a Vocational Expert each testified.[5]  (Tr. 589.)  Simmons' attorney, Chris Godios, was also present. (Tr. 589.)  The hearing continued on April 10, 2007, *via* video conference during which Simmons, a different Medical Expert who addressed Simmons' mental condition and a different Vocational Expert each testified.  (Tr. 589.)  A different attorney, Scott Smith, represented Simmons during the second part of the hearing.  (Tr. 589.)

ALJ1 issued a decision on July 25, 2007, wherein he found that Simmons was not disabled from August 1, 2000, to April 9, 2007 but "ha[d] been under a 'disability' as defined in the Social Security Act, since April 10, 2007 *but not before*" because his mental impairments

2004 is significant because it is the last date by which Simmons was insured for DIB.  (Tr.603.) April 9, 2007 is significant because Simmons had been found disabled as of April 10, 2007, pursuant to an earlier ALJ's ruling.  (Tr. 599.)  As explained in the main text that follows, the ALJ reviewing the matter upon interagency remand agreed with the disability date of April 10, 2007 and extended the period of disability to include an earlier time-period spanning back to March 24, 2004.  The time-period at issue (in the instant matter) is August 1, 2000 through March 23, 2004.

[4]  Applications were filed on March 12, 2003.

[5]  Hearing was conducted *via* video conferencing technology from San Diego, California.

-3-

(5:09-CV-01200)

meet Listings 12.04 and 12.08.  (Tr. 593, 598.) (Emphasis added).  ALJ1 also recommended the appointment of a representative payee to manage Simmons' benefits, anticipating that Simmons would have difficulty in managing his benefits.[6]  (Tr. 599.)

On May 23, 2008, the Appeals Council affirmed ALJ1's decision that Simmons was disabled beginning April 10, 2007.  (Tr. 603.)  Because the recording of the hearing proceedings could not be retrieved, the Appeals Council granted Simmons' request for a review of the portion of the decision that found him not disabled prior to April 10, 2007.  (Tr. 603.)  The Appeals Council ordered a new hearing with a Medical Expert to assist in the determination of when Simmons' disability actually commenced.

Pursuant to the Appeals Council's instructions, ALJ Peter Beekman ("ALJ2") conducted the new hearing on December 15, 2008.  (Tr. 17.)  A Medical Expert, a Vocational Expert and Simmons, without counsel, appeared and testified during the hearing.  (Tr. 17.)  On December 29, 2008, ALJ2 determined that Simmons was "not disabled prior to March 24, 2003, but became disabled on that date and has continued to be disabled through" the date of ALJ2's December 29, 2009 decision.[7]  (Tr. 24, 25.)  ALJ2's decision became the final decision of the Agency, given the Appeals Council's declination to review on April 7, 2009.  (Tr. 10.)

Seeking judicial review of the Agency's final decision denying him benefits for the period from August 1, 2000, to March 23, 2003, Simmons, *pro se*, timely filed a Complaint alleging that

---

[6] Simmons did not appeal that portion of ALJ1's ruling.

[7] Like ALJ1, ALJ2 also recommended the appointment of a representative payee to manage Simmons' benefits.

(5:09-CV-01200)

from August 1, 2000, to March 23, 2003 his "disabilities became severe enough to qualify for SSI/SSD disability benefits."  ECF No. 16 at 1.

Although represented by counsel during the proceedings before ALJ1, Simmons was *pro se* during the hearing before ALJ2[8] and in the instant appeal.  As the docket reflects, at several junctures, the Court has prompted and assisted Simmons, to the extent possible, in order to move the case forward.  *See, e.g.*, docket entries regarding Simmons' application to proceed *in forma pauperis* (including ECF No. 4), Notice to serve complaint upon Commissioner (ECF No. 7), Order to show cause prompting filing of Simmons' brief on the merits.  ECF No.12.

On February 26, 2010, Simmons, filed a motion requesting  a "verbal" hearing stating that he does "not exactly know how to file a brief of the merits."  ECF No. 15.  On that same date, however, Simmons satisfied his obligation to the Court by filing a "Brief of Merits."  ECF No. 16.  The Court denied Simmons request for a hearing and invited him to contact a local attorney experienced in successfully litigating Social Security disability appeals in federal court or an attorney of his own choosing, should he choose to do so.[9]  ECF No. 20.[10]  Simmons

_____

[8]  ALJ2 summarized that he had advised Simmons of his right to counsel and acknowledged Simmons' choice to proceed *pro se* during the hearing.  (Tr. 653.)

[9]  The Commissioner objected to Simmons' request for a hearing stating that "the facts and legal arguments will be adequately presented in the briefs and the record and that the decisional process would not be significantly aided by a verbal hearing."  ECF No. 17.

[10]  ECF No. 20 mistakenly states that "Simmons' brief on the merits remains due on April 28, 2010" when in fact, it was the defendant's brief which was due on that date, as Simmons had already filed his brief on the merits on February 26, 2010.  This misstatement does not appear to have caused Simmons confusion because on April 2, 2010, he moved the Court to extend his time to "Amend Plaintiff's Brief of Merits."  ECF No. 21.  The Court granted this motion, giving Simmons until April 23, 2010.

(5:09-CV-01200)

contacted the undersigned's staff *via* telephone to vociferously object to the denial of his request

for a hearing.  In response, Simmons was again referred to the experienced local attorney and

also to the Court's Law Clerk dedicated to assisting *pro se* parties.  ECF No. 20.  To the

knowledge of the undersigned, Simmons did not contact either the suggested attorney or the

Court's *Pro Se* Law Clerk for assistance.

 On April 2, 2010, Simmons moved the Court for an extension of at least two weeks to

permit him to amend his previously filed brief on the merits.  ECF No. 21.  To ensure that

Simmons had a more than adequate opportunity to amend his brief, the Court granted him a 30-

day extension of time – two weeks more than he had requested.  ECF No. 22.   To date, Simmons

has not filed an amended brief or sought additional time to do so.[11]

With the receipt of the Agency's brief on the merits on July 1, 2010, the matter ripened

for ruling.

### III.   Law and Analysis

#### A.    Judicial Review of a Final Agency Decision

Judicial review of the ALJ's decision denying disability benefits is limited to determining

whether there is substantial evidence to support the denial decision and whether the ALJ properly

applied relevant legal standards.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681

(6th Cir. 1989) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  "Substantial evidence

is more than a scintilla of evidence, but less than a preponderance; it is such relevant evidence as

---

[11]  The undersigned notes that Simmons' brief on the merits sufficiently amplified the
issue on appeal and no amendment was necessary.

(5:09-CV-01200)

a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994).  Under 42 U.S.C. § 405(g), the findings of the ALJ are conclusive if they are supported by substantial evidence.

        The substantial evidence standard presupposes that there is a "zone of choice" within which the Agency may proceed without interference from the courts.  *Mullen*, 800 F.2d 535, 545 (6th Cir. 1986) (*quoting Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir.1984)).  The ALJ's decision must be affirmed if it is supported by substantial evidence even if the reviewing court would have decided the matter differently, and even if substantial evidence also supports a different conclusion.  *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen*, 800 F.2d at 545.  "Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006).

        In determining the existence of substantial evidence, the reviewing court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001).  The district court may look into any evidence in the record, regardless of whether it has been cited by the ALJ. *Mullen*, 800 F.2d at 545.  The reviewing court, however, may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard*, 889 F.2d at 681; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

-7-

(5:09-CV-01200)

     **B.**     **Standard for Establishing Disability**

     To establish disability under the Act, a claimant must show that he is unable to engage in substantial activity due to the existence of "a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months." *See* 42 U.S.C. §§ 423(d)(1)(A), 1382(c)(a)(3)(A). The claimant's impairment must prevent him from doing his previous work, as well as any other work existing in significant numbers in the national economy. *See* 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

     To determine whether a claimant is disabled, Agency regulations prescribe a five-step sequential evaluation. If a claimant can be found disabled or not disabled at any step of the sequential evaluation, the review ends. 20 C.F.R. § 404.1520(a). At Step One, the ALJ considers the claimant's work activity. A claimant is not disabled if engaged in substantial gainful activity, *i.e.*, working for profit. At Step Two, the ALJ considers the medical severity of the claimant's impairments. A claimant is not disabled if he does not have a severe medically determinable physical or mental impairment that also meets the duration requirement in 20 C.F.R. § 404.1509, or a combination of impairments that are severe and meets the duration requirement. At Step Three, the ALJ determines whether the claimant has an impairment that meets or equals one of the criteria of an impairment listed in Appendix 1 and meets the duration requirement. See 20 C.F.R. § Part 404, Subpart P, Appendix 1. A claimant is disabled if he has an impairment that meets the listing and the duration requirement. Before considering the fourth step, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), *i.e.*, the

(5:09-CV-01200)

claimant's ability to perform physical and mental work on a sustained basis despite limitations due to impairments.  At Step Four, the ALJ considers whether the claimant's RFC permits him to perform past relevant work.  The claimant bears the burden of proof at steps one through four. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).  At Step Five, however, the burden shifts to the Commissioner to identify "a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile."  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

At Step Five, the final step, the ALJ considers the claimant's RFC and his age, education, and work experience to determine whether the claimant may work.[12]  If the claimant's impairment prevents him from doing his past relevant work, but other work exists in the national economy that the claimant can perform, the claimant is not disabled.  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *see also Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (describing five-step evaluation).

The claimant bears the ultimate burden of proof on the issue of disability.  *See* 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled"); *Richardson v. Heckler*, 750 F.2d 506, 509 (6th Cir. 1984) ("A social security disability claimant bears the ultimate burden of proof on the issue of disability.").  Significantly, the claimant bears the burden of proof  *up to* Step Five of the sequential evaluation.  *See* 20 C.F.R. § 404.1512(a); *Bowen v.*

---

[12]  In those cases where a claimant is found able to perform the requirements of his past relevant work, he will not be found disabled.  *See Studaway v. Sec'y of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir.1987); *see also* 20 C.F.R. § 404.1520(a)(4)(iv) (indicating that "[i]f you can still do your past relevant work, we will find that you are not disabled.").

(5:09-CV-01200)

*Yuckert*, 482 U.S. 137, 146 n.5 (1987) ("the Secretary bears the burden of proof at step five, which determines whether the claimant is able to perform work available in the national economy").  The burden of proof regarding the establishment of disability onset date also lies with the claimant.  *McClanahan v. Comm'r of Soc. Security*, 474 F.3d 830, 836 (6th Cir. 2006).

Claimant's ultimate burden of proof includes an obligation to provide detailed medical evidence allowing the ALJ to make an informed decision.  *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986).  And, when circumstances require, the claimant must not only produce a diagnosis of an impairment, but must also demonstrate correlative functional limitations.  20 C.F.R. § 404.1512(c).

**C.     ALJ2's Decision that Simmons was not Disabled from August 1, 2000 to March 23, 2003 is Supported by Substantial Evidence**

Simmons makes many claims, including allegations of human and civil rights violations resulting from procrastination and the purposeful jumbling and misplacing of medical records and an intent to seek a class action settlement.  The focus of Simmons' appeal, however, is clearly the limited time period during which he was found to be disabled.  As it stands, the Agency has found Simmons disabled from March 24, 2003 going forward.  Simmons argues that his disabilities were severe enough starting on August 1, 2000, through March 23, 2003, to qualify for benefits for that time period, given that his "disabilities were and are exactly the same then as they are now . . ."  ECF No. 16 at 1.  Essentially, Simmons' argues that ALJ2's decision finding him not disabled for the time period spanning August 1, 2000, through March 23, 2003 is not supported by substantial evidence, not in accordance with Agency regulations and against prevailing laws.   For the reasons below, the undersigned disagrees.

-10-

(5:09-CV-01200)

Simmons claimed disability based on physical impairments of both knees, lower left leg and arthritis in his back.  (Tr. 175.)  He attributes the problems with his legs to an automobile accident that occurred in January 2000.[13]  (Tr. 178.)  Although the exact origin of his back problems is not clearly set out in the record, the record amply reflects Simmons' back pain and treatment starting in late 2003.  *See* Note 15 below.  Simmons' asserts that the leg and back problems caused him to have "trouble walking and lifting" limiting his ability to work.  (Tr. 175.) Despite Simmons' complaints of disabling physical impairments, ALJ2 found the limitations caused by Simmons mental impairments, not primarily his physical impairments, the basis for his disability determination effective March 24, 2003.[14]  (Tr. 593 & 24, respectively.)

The claimant has the burden of providing "a complete record, defined as evidence complete and detailed enough to enable the [ALJ] to make a disability determination." *Landsaw, 803 F.2d at 214*.  Apart from Simmons' allegations and subjective complaints, the record is devoid of objective or medical evidence substantiating the disabling effects of the physical or mental impairments that Simmons' alleges has caused him to be disabled from August 1, 2000, through March 23, 2003.

Although the record contains evidence describing the injuries to Simmons' legs and corroborating the treatment he received as a result of the automobile accident in January 2000,

---

[13]  Simmons lists January 21, 2000, as the date of the accident.  (Tr. 178.)  Hospital records show treatment for leg injuries starting on January 22, 2000.  (Tr. 237-81.)  Information submitted in aid of his request for reconsideration, indicates that Simmons may have experienced back problems before the automobile accident in which he injured his legs.  (Tr. 215.)

[14]  Without the attendant mental impairments and their related symptoms, ALJ2 opined that Simmons was capable of performing a full range of light work.  (Tr.12.)

-11-

(5:09-CV-01200)

ALJ2 did not find evidence in the record substantiating a disability until 2003.  (Tr. 237-81.)

Tests and surgery incident to the automobile accident were performed on January 22 and 23,

2000.  (Tr. 237-81.)  The hospital discharged Simmons on January 24, 2000.  (Tr. 240, 245.)  The

record also contains a follow-up (progress) note dated February 4, 2000, from one of Simmons'

surgeons, Dr. Dave Vittetoe, stating that Simmons' leg lacerations are healing well; there is no

sign of infection; sutures were removed; and there was no pain with passive range of motion.

(Tr. 229.)  The next available medical evidence in the record is dated April 15, 2003,

approximately three years later.  (Tr. 230-36.)  It is this evidence that persuaded ALJ2 that

Simmons became disabled effective March 24, 2003, and not before.

On April 15, 2003, at the request of the Agency, Dr. Paul A. Steurer an orthopedic

specialist, conducted a physical examination of Simmons.  (Tr. 230.)  Dr. Steurer found arthritis

in Simmons' spine; an excellent and full range of motion of his shoulder, elbows, wrists and

hands; normal reflexes, strength and sensation in both lower extremities; some pain in both knees

with motion, but both knees were stable; and some cervical spondylosis at C6-7.  (Tr. 231.)  Dr.

Stuerer diagnosed: 1) cervical strain with cervical spondylosis; 2) lumbar sprain and strain; and

3) multiple lacerations to both legs and the left knee.  (Tr. 232.)  Dr. Steurer concluded that

Simmons "will have difficulties doing heavy, repetitive work and any work requiring a lot of

climbing, squatting or crawling activities."  (Tr. 232.)  ALJ2 gave "great weight" to Dr. Steurer's

opinion and relied upon it in finding Simmons not disabled for the time period before March 24,

(5:09-CV-01200)

2003.[15]  (Tr. 21.)

While an ALJ is required to conduct a "full inquiry" he is not required to solicit medical evidence unless doing so is necessary for the ALJ to render a disability decision.  *See Skinner v. Astrue*, 478 F.3d 836, 844 (7th Cir. 2007).  The regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant him the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination.  20 C.F.R. § 404.1517.  In all cases, the final determination of disability, the severity of an impairment, the claimant's residual functional capacity and the application of vocational factors are reserved to and are the responsibility of the Commissioner.  20 C.F.R. § 404.1527(e).

In this case, the Agency appropriately sought the opinion of an orthopedic specialist – Dr. Steurer – to assist ALJ2 in rendering an appropriate disability decision about the period of alleged disability before March 24, 2003.  In accordance with Agency regulations more weight is generally given to "the opinion of a source who has examined" the claimant, 20 C.F.R. § 404.1527(d)(1), and issued an opinion "about medical issues related to his or her area of specialty . . . ."  20 C.F.R. § 404.1527(d)(5).  Both characteristics support ALJ2's decision to assign Dr.

---

[15]  The next available medical evidence of a physical impairment is from early August and September of 2003.  (Tr. 283-98.)  In response to Simmons' complaints of back pain, he had multiple examinations of his back and was prescribed pain medications and advised to exercise. A notation from the Western Reserve Spine and Pain Institute reported that Simmons would no longer be seen as a patient "due to excessive use of pain meds."  (Tr. 290.)  Also in September of 2003, the record shows that Simmons began to receive psychological treatment.  (Tr. 299.)  None of these records call into question the findings of ALJ2 that "[n]o treating or examining physician ha[d] indicated findings that would satisfy the severity requirements of any listed impairment" prior to March 23, 2003.  (Tr. 20.)  As importantly, ALJ2 considered Simmons' back pain and the records dated early August and September of 2003, (Tr. 283-98), in his determination.  (Tr. 22.)

-13-

(5:09-CV-01200)

Steurer's opinion great weight.  Dr. Steurer orthopedically examined Simmons and opined within

his area of specialty – orthopedics.  Dr. Stuerer's resulting opinion only restricted Simmons'

from performing heavy repetitive work prior to March 24, 2003.  (Tr.21.)  As importantly,

Agency regulations support ALJ2's reliance upon Dr. Steurer's opinion because that opinion was

consistent with and supported by the evidence in the record for the same time period.  20 C.F.R.

§ 404.1512(c).

   ALJ2 committed no error of law or violation of Agency regulation in relying upon Dr.

Steurer's opinion along with the other medical evidence of record in finding that Simmons'

residual functional capacity permitted Simmons to "perform the full range of medium work"

prior to March 24, 2003.[16]  (Tr. 20.); *see also* 20 C.F.R. §§ 404.1527(d)(1), (5).  ALJ2's

assessment of the medical source evidence and the resultant residual functional capacity

determination squarely falls within the Agency's "zone of choice."[17]  *Mullen*, 800 F.2d 535, 545

(6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir.1984)).

### IV.  Conclusion and Recommendation

   After reviewing the administrative record as a whole, including the medical records,

---

[16]  ALJ2 specifically found that from August 1, 2000 through March 23, 2003 Simmons "had the residual functional capacity to perform the full range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c)."  (Tr. 20.)

[17]  ALJ2 articulated that, in addition to Dr. Steurer's opinion, he "considered the opinion of State Agency medical consultants who evaluated this issue [*i.e.* whether Simmons' met or medically equaled a listing] at the initial and reconsideration levels of the administrative review process."  (Tr.20.)  As a result, ALJ2 found "[n]o treating or examining physician had indicated findings that would satisfy the severity requirements of any listed impairments" prior to March 24, 2003.  (Tr. 20.)

-14-

(5:09-CV-01200)

relevant testimony and legal standards applied, the undersigned finds that ALJ2's decision – the

final Agency decision – is based upon substantial evidence and rendered in accordance with

Agency rules and controlling legal authority.

     For the reasons provided above, the undersigned Magistrate Judge recommends that the

Agency's final decision denying Paul Scott Simmons Disability Insurance Benefits and

Supplemental Security Income from August 1, 2000, through March 23, 2003 be affirmed.

     This matter is terminated from the docket of the undersigned.


 July 20, 2010                             *s/ Benita Y. Pearson*
Date                                      United States Magistrate Judge


## OBJECTIONS

     Objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

-15-